IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HUSKY TRANSPORTATION, INC., | § § § |
| Plaintiff | § § |
| v. | §  CIVIL ACTION NO.: _____ § |
| OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH CAROLINA, | § § § § § |
| Defendant. | § |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW, Plaintiff Husky Transportation, Inc. ("Husky Transportation"), and files this its Original Complaint For Declaratory Judgment against Defendant Occidental Fire and Casualty Company of North Carolina, ("Occidental"), and in support thereof will show the Court as follows:

**I.
PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Husky Transportation, Inc., is a corporation incorporated in the state of Michigan, with its principal place of business in Hamtramck, Michigan.

2. Defendant, Occidental Fire and Casualty Company of North Carolina, is a corporation incorporated in the State of North Carolina with its principal place of business located at 702 Oberlin Rd, Raleigh, NC 27605.

3. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 et seq., TEX. CIV. PRAC. & REM. CODE ANN. §37.001, et seq. (Vernon 2007), and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between

the parties as more fully appears in this complaint. This Court has original jurisdiction under 28 U.S.C. § 1332(a) as diversity of citizenship exists between Plaintiff and Defendant at the time of filing this suit. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the Underlying Suit occurred in this District.

## II.
## FACTS

5. Husky is a Defendant in the lawsuit styled as *Helen Galvan and Cindy Galvan, Individually and as mother and next friend of Ivan Maldonado and Leonardo Maldonado, minors v. Husky Transportation, Inc., T&J Deliveries, LLC, and Thomas Salyer*, Cause No. 2013-CVT-0001455-DJ, in the 49th Judicial District Court of Webb County, Texas.

6. The Underlying Suit involves the claimants' bodily injuries as a result of an automobile accident on June 26, 2012, caused by Thomas Salyer ("Salyer") while Salyer was operating his 2001 Freightliner tractor.

7. On June 19, 2012, Salyer (and his business T&J Deliveries) entered into an agreement with Husky to lease his tractor and a driver to Husky ("the Agreement"). According to the Agreement, Husky agreed to provide insurance to Salyer "only for transportation involving [Husky's] shipments or equipment under dispatch to [Husky]." Salyer agreed to provide insurance for all bobtail/deadhead use of the tractor. Further, Salyer agreed to defend/indemnify Husky for "all claims asserted against [Husky] arising out of acts or omissions of [Salyer]."

8. Pursuant to the Agreement, on June 26, 2012, Salyer drove the leased tractor and Husky's trailer from San Antonio to Laredo to deliver a shipment for Husky. After delivering the load, Salyer drove his tractor with a deadhead trailer (i.e., without Husky's shipments or

equipment) to a restaurant for dinner. After finishing his dinner, Salyer was on his way to a rest stop when he rear-ended a car with four passengers.

9. After learning of the claim, Plaintiff's insurance carrier, Star Insurance Company ("Star"), tendered the claim to Occidental on December 12, 2012. Occidental failed to respond to Star's tender. Subsequently, the four injured passengers filed the Underlying Suit against Husky and Salyer on January 27, 2014. Star once again tendered to Occidental on October 7, 2014, requesting that Occidental defend and indemnify Husky for the lawsuit. To date, Occidental has refused to defend and indemnify Husky for the Underlying Suit despite numerous requests for Occidental to defend Husky.

10. On April 8, 2015, the trial court judge in the Underlying Suit granted Husky's Motion for Summary Judgment, ordering that Salyer and his company, T&J Deliveries, owe Husky a duty to defend and to indemnify as to the claims against Husky pursuant to the Agreement. Despite this ruling, Occidental continues to refuse to pay for Husky's defense costs and to indemnify Husky for the Underlying Suit.

### III.
### THE OCCIDENTAL INSURANCE POLICY

11. Occidental issued a business auto insurance policy, bearing policy number BA0694889, with effective dates of September 1, 2011, to September 1, 2013 ("the Occidental policy). The Occidental policy provided liability coverage to Salyer and T&J for "covered autos," which included "those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." The Occidental policy states in relevant part:

**SECTION II — LIABILITY COVERAGE**

**A.    Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1.    Who Is An Insured**

The following are "insureds":

a.    You for any covered "auto".

b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1)    The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2)    Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3)    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        (4)    Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

        (5)    A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

  c.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

. . .

## IV. BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

. . .

5. Other Insurance

  a.    For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

        (1)    Excess while it is connected to a motor vehicle you do not own.

        (2)    Primary while it is connected to a covered "auto" you own.

  b.    For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

  c.    Regardless of the provisions of Paragraph a. above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

  d.    When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of

our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

**SECTION V – DEFINITIONS**

A. "Accident" includes continues or repeated exposure to the same conditions resulting in "bodily injury" or "property damage"

B. "Auto" means

   1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads;

   2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

. . .

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

* * *

**LIABILITY FOR THE PERSONAL USE
OF A COMMERCIAL VEHICLE**

**(Non-Trucking Liability)**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**SECTION I — COVERED AUTOS A. Description of Covered Auto Designation Symbols - Symbol 7 is replaced by the following:**

| Sy | Description of Covered Auto Designations Symbol |
|---|---|
| 7 | Described in Item Three of the Declarations for which a premium charge is shown which are leased to a Motor Carrier in whose name a policy has been issued and such insurance shall apply only to the "covered |

**SECTION ll — LIABILITY COVERAGE, A. Coverage Paragraph 1 is replaced by the following:**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by "accident" involving the personal use of a "covered commercial auto(s)" or "trailers" owned, maintained, or used as a "covered commercial auto(s)".

**SECTION II — LIABILITY COVERAGE, A. Coverage 1. Who Is An Insured a. is revised as follows:**

> a. You, only as the lessor of a Motor Carrier, in whose name the policy has been issued and such insurance shall apply only to the "covered commercial auto(s)" described in such policy

**The following is added to SECTION II — LIABILITY COVERAGE - B. EXCLUSIONS**

> 14. A "covered commercial auto(s)" or "trailer(s)" when being used, or for any maintenance when under orders from or after being dispatched by any trucking company or lessee of such "covered commercial auto(s)" until you have finished the assignment including return to your initial point of dispatch or your principle place of garaging, whichever comes first.

> 15. A "covered commercial auto(s)" or "trailers" when being used to transport goods or merchandise for any purpose or business whether pursuant to long term lease, trip lease or individual carriage or while such goods are being loaded or unloaded.

> 16. A "covered commercial auto(s)" or "trailers" when being maintained or used under any permit, authority or operating right granted by any governmental agency to operate as a common or contract carrier including your own permit, authority or rights.

> 17. Any "covered commercial auto(s)" or "trailers" while being operated, maintained or used in any racing event, speed contests, pulling event or road testing of a tractor modified for speed purposes including driving to or from a race or speed event.

> 18. This insurance does not apply to any award against any insured for fines, penalties, punitive or exemplary damages or sanctions made by a court of the United States of America or any State which comes within the jurisdiction or the United States of America. However, this exclusion shall not apply to costs, charges and expenses incurred in the defense of any Claim otherwise covered

by this insurance which also demands such fines, penalties, punitive or exemplary damages or sanctions.

**SECTION V — DEFINITIONS has been changed as follows:**

**G. is deleted and replaced by the following:**

"Insured(s)" means only those persons or organizations that have leased autos to the "motor carrier" designated on the form under a valid "long-term lease" agreement and have been issued a certificate of insurance forming a part of the policy, but shall include any employee of the "named insured(s)" who is operating a "covered commercial auto(s)" with the knowledge, permission and consent of the "Insured(s)" in the course of his employment with the "Insured(s)". No "motor carrier" is an "Insured(s)" even if the "Insured(s)" is leased to it/them.

**the following DEFINITIONS are added:**

Q.   "Covered commercial auto(s)" means only those "auto(s)" and any "trailer" attached thereto scheduled on the certificate of insurance attached to and forming part of this policy and for which at the time of loss there is a valid "long term lease" with the designated "motor carrier".

R.   "Trailer(s)" means a commercial type and only in conjunction with an Owner-Operator's "long-term lease" agreement and while connected to a "covered commercial auto". 'Trailer(s)" does not include any boat trailer, mobile home or recreational type trailer.

S.   "Motor carrier" means any person or organization engaged in the business of transporting property by "vehicle" for hire.

T.   "Long term lease" means a written lease agreement between the "named insured(s)" and the designated "motor carrier" for not less than thirty (30) consecutive calendar days duration and complying with the Interstate Commerce Act or Department of Transportation Regulations or if not governed by the Interstate Commerce Act or the regulations of the Department of Transportation, complying with applicable State regulations. Long term lease shall not mean a trip lease (single trip or duration less than thirty (30) days). Such "long term lease" agreement must show exclusive possession, control and use of the "covered commercial auto(s)" by the lessee as well as effective date, time and duration of the lease.

U.   "Sudden" means instantaneous or happening within a couple of minutes.

* * *

# IV.
# JUSTICIABLE INTEREST

12. Husky and its insurer Star have made numerous demands for a defense and indemnity under the Occidental policy for the Underlying Suit. However, Occidental denies that it has any duty to provide any defense or indemnity to Husky under the Occidental policy.

13. Husky seeks a declaration as to its rights, if any, under the Occidental policy for the Underlying Suit.

14. An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

# V.
# COUNTS

### A.   Count I – Occidental owes Husky a defense and indemnity as an insured

15. Husky realleges and incorporates by reference the allegations found in paragraphs 1 to 14 above.

16. Husky is an "insured" under subparagraph b. of "Who Is An Insured" part of the Occidental policy because Husky was "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." In the Underlying Suit, the plaintiffs sued Husky for injuries that allegedly occurred while Husky was allegedly "using" Salyer's tractor (a covered auto) that Salyer owns and "using" Husky's own trailer (also a covered auto) for transporting goods to customers pursuant to the Agreement. This provision has an exception for "[t]he owner or anyone else from whom you hire or borrow a covered 'auto'." But this exception does not apply "if the covered 'auto' is a 'trailer' connected to a covered 'auto' you own." This "owner exception" does not apply to Husky because the "covered auto" borrowed by Salyer from Husky

is a "trailer connected to a covered auto you [Salyer] own." At the time of the accident, Salyer was driving his tractor with Husky's trailer. And Husky's trailer is a "covered auto" because it would be considered "any 'trailers' you don't own while attached to any power unit described in Item Three" (Covered Auto Designation Symbol 7). Therefore, Husky is an "insured" under the Occidental policy.

17. Husky may also be an "insured" under subparagraph c. of "Who Is An Insured" part of the Occidental policy. To the extent Husky is liable for T&J or Salyer in the Underlying Suit, Husky would be considered "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

18. The Occidental "Who Is An Insured" language is revised by an endorsement titled "Liability For the Personal Use of a Commercial Vehicle" for solely non-trucking liability. However, this Endorsement modifies only subparagraph a. of "Who Is An Insured" and does not modify subparagraph b. As such, this Endorsement does not affect Husky's status as an "insured" under the "Who Is An Insured" part of the Occidental policy.

19. As an "insured," Occidental was contractually obligated to defend Husky in the Underlying Suit.

20. Occidental breached its contractual obligation by refusing to defend Husky in the Underlying Suit despite the Occidental policy providing primary insurance coverage to Husky while the Star policy provided only excess insurance coverage. The Occidental policy provides primary coverage to Husky for liability arising out of Salyer's tractor because the tractor is a covered auto under the Occidental policy and Salyer owns the tractor. With respect to liability arising out of the trailer, the Occidental provides primary coverage because the Occidental policy states that "while a covered 'auto' which is a 'trailer' is connected to another vehicle, the

Liability Coverage this coverage form provides for the 'trailer' is . . . [p]rimary while it is connected to a covered 'auto' you own." The Occidental policy also states that "[r]egardless of the provisions of Paragraph a. above, this coverage form's Liability Coverage is primary for any liability assumed under an 'insured contract'." Here, the Agreement between Salyer and Husky/T&J is an "insured contract" because Salyer/T&J assumed Husky's tort liability, as the Agreement states that Salyer will defend/indemnify Husky for "all claims asserted against [Husky] arising out of acts or omissions of [Salyer/T&J]." Therefore, the Occidental policy provides primary coverage to Husky for the underlying lawsuit.

21. Husky and Star have expended money to defend Husky in the Underlying Suit as a result of Occidental's refusal to provide Husky with a defense. Husky has also incurred attorneys' fees and costs in bringing this lawsuit.

22. In addition to defense costs, Occidental owes indemnity to Husky as an "insured." The Star policy insuring agreement states in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

23. The Occidental "Liability for the Personal Use of a Commercial Vehicle" endorsement amends the insuring agreement provision referenced above for solely non-trucking liability with the following language:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by "accident" involving the personal use of a "covered commercial auto(s)" or "trailers" owned, maintained, or used as a "covered commercial auto(s)".

24. Occidental owes Husky indemnity for the underlying judgment against Husky under either of these provisions. Specifically, under the insuring agreement, the Occidental policy provides coverage to Husky because Husky is an insured (as illustrated above) and the

damages sought in the Underlying Suit for the plaintiffs' injuries involve "bodily injury" as that term is defined by the Occidental policy. Moreover, the Underlying Suit involves a trucking "accident" and the tractor and trailer involved in the Underlying Suit are considered covered "autos" as that term is defined under the Occidental policy.

25.     To the extent the "Liability for the Personal Use of a Commercial Vehicle" is relevant, this endorsement (for which a premium was paid) would provide insurance coverage to Husky because the accident also involved the personal use of a "covered commercial auto." The accident involved Salyer's personal use because Salyer was using his tractor and empty trailer to go to and from dinner at a restaurant. Salyer had completed his most recent assignment when he unloaded cargo in Laredo. After completing his assignment in Laredo, Salyer had dinner by himself and considered himself "off-duty" during that time. After he left the restaurant, he was driving his own tractor with an empty trailer when the accident occurred. Salyer's tractor would be considered a "covered commercial auto" because a certificate of insurance listing Husky's 2001 Freightliner tractor was attached to and formed as a part of the Occidental policy, and there was a valid "long term lease" involving T&J at the time of the accident.

    **B.**  <u>**Husky Has a Right to Recover As A Judgment Creditor Against Occidental**</u>

26.     Husky realleges and incorporates by reference the allegations found in paragraphs 1 to 25 above.

27.     The Underlying Suit resulted in a judgment against Husky.

28.     Pursuant to the summary judgment order in the Underlying Suit dated April 8, 2015, Husky has a contractual right to recover from Salyer and T&J Deliveries, Inc. for defense and indemnity.

29.     Husky's right to recover from Salyer and T&J is covered under the Occidental policy. Moreover, Husky's contractual right to recover involves a covered "insured contract" under the Occidental policy. The Occidental policy defines "insured contract" to include "that part of any other contract or agreement pertaining to your business (including indemnification of a municipality in connection with work performed for a municipality" under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a "liability that would be imposed by law in the absence of any contract or agreement."

30.     The indemnity agreement entered into between Salyer, T&J, and Husky was part of a contract agreement pertaining to Salyer and T&J's business in which they assumed the tort liability of Husky. As a result, there is coverage under the Occidental policy for the undertaking and for the obligation that the court has determined is owed by Salyer and T&J to Husky.

## VI.
## PRAYER

31.     For the reasons stated, Husky prays that Occidental be cited to appear herein and that upon trial of this case, Husky be awarded judgment as follows:

a.  A declaration that Occidental owes its insured Husky reimbursement for the defense in the Underlying Suit as the primary insurer under the terms of policy number BA 0694889;

b.  A declaration that Occidental owes its insured Husky indemnity in the Underlying Suit as the primary insurer under the terms of policy number BA 0694889;

c.  A declaration that Occidental owes Husky for the judgment against Husky in the Underlying Suit under the terms of the policy number BA 0694889;

d   Attorneys' fees;

e.  Costs of Court;

f.  All such other and further relief to which Husky may show itself justly entitled.

Dated;  August 11, 2015

                        Respectfully submitted,

                        By:   *s/ R. Brent Cooper*
                              **R. BRENT COOPER**
                              Texas State Bar No. 04783250
                              Southern District Bar No. 18271
                              **ROBERT J. WITMEYER**
                              Texas State Bar No. 24091174
                              Southern District Bar No. 260115

                        **COOPER & SCULLY, P.C.**
                        Founders Square
                        900 Jackson Street, Suite 100
                        Dallas, Texas 75202
                        Telephone:     (214) 712-9500
                        Telecopy:       (214) 712-9540

                        **ATTORNEYS FOR PLAINTIFF,**
                        **HUSKY TRANSPORTATION, INC.**